THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA
ex rel. ANTHONY FULLINGTON,

## CV 98 3618

                  Plaintiff,

FILED IN CAMERA
AND UNDER SEAL
31 USC 3730(b)(2)

     - against -

98 Civ.

PARKWAY HOSPITAL, INC.
a New York Corporation,
70-35 113th Street,
Forest Hills, New York 11375

GLASSER, J.
MANN, M.J.

JURY TRIAL DEMANDED

                Defendant.
- - - - - - - - - - - - - - - - - - - - X

## COMPLAINT
(False Claims Act)

### JURISDICTION AND VENUE

1.   Qui Tam Plaintiff Anthony Fullington brings this action to recover damages and civil penalties on behalf of the United States of America arising out of false claims presented by Defendant under the Federal Medicare Program, 42 U.S.C. Sect. 1395 et seq.  This action arises under the provisions of Title 31 U.S.C. Sect. 3729 et seq. popularly known as the False Claims Act (the "Act") which provides that the United States District Courts shall have exclusive jurisdiction of actions brought under the Act.  This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. Sects. 1331 and 1345 and 31 U.S.C. Sect. 3730(b).

2.   Section 3732(a) of the Act provides that "Any action under section 3730 may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."   The acts complained of herein occurred in Queens County, New York, within this judicial district.   The Defendant resides in this judicial district.   The Defendant transacts business in this judicial district.   Venue is therefore proper pursuant to 31 U.S.C. Sect. 3732(a) and 28 U.S.C. Sect. 1391(c).

3.   Under the Act, this complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on the Defendant until the Court so orders.   The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the complaint and the material evidence and information.

PARTIES AND OTHER ENTITIES

4.   Qui   Tam   Plaintiff   Anthony   Fullington   (the "relator") is a citizen of the United States and is a resident of 159-14 Grand Central Parkway, Jamaica Hills, Queens County, New York 11432.   He holds a B.S. degree in Accounting from York College   and   a   Masters   Degree   in   Taxation   from   St.   Johns University.   The relator is suing on behalf of and in the name of the United States pursuant to the Qui Tam provisions of the Act. From August 12, 1996 through the present date, the relator has

2

been employed as an Associate Director of Finance of Defendant Parkway Hospital, Inc.

5. This action is not based upon any public disclosures of information within the meaning of 31 U.S.C. Section 3730(e)(4)(A). The relator has direct and independent knowledge, within the meaning of 31 U.S.C. Section 3730(e)(4)(B), derived through his employment with Defendant Parkway Hospital, Inc., of the information on which the allegations set forth in this Complaint are based. He has voluntarily provided this information to the government prior to filing this Complaint. To the extent any of these allegations may have been publicly disclosed, within the meaning of 31 U.S.C. Section 3730(e)(4)(A), the relator was a source of the disclosures.

6. The relator has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of New York, prior to the filing of this complaint, a statement of all material evidence and information related to the complaint. This disclosure statement supports the existence of the false claims of the Defendant.

7. Defendant Parkway Hospital, Inc. ("Parkway Hospital") is a corporation organized under the laws of the State of New York, with its principal address at 70-35 113th Street, Forest Hills, New York 11375. Parkway Hospital transacts business in the Eastern District of New York, and it maintains an office at 70-35 113th Street Forest Hills, New York 11375. Parkway Hospital is in the business of providing comprehensive hospital health care services, including medical, surgical

3

specialized therapies, nursing care, and personal care. To plaintiff's best knowledge, Parkway Hospital is owned by twenty-four (24) medical doctors who are its shareholders.

8. All of the acts attributed to Parkway Hospital in this complaint were performed by and through its agents acting within the  scope of their employment with Parkway Hospital.

9.  At all times relevant to this complaint, Parkway Hospital received and continues to receive substantial funds from the United States Government through provisions of the Federal Medicare Program. The amount of funds received is governed under regulations promulgated by the Health Care Financing Administration ("HCFA"), which provides for payments to hospitals caring for Medicare qualified patients. HCFA is an agency of the United States, operating within the United States Department of Health and Human Services ("HHS").

10. At all times relevant to this complaint, HHS and/or HCFA administered the Medicare program in the state of New York through a private contractor ("fiscal intermediary"), Empire Blue Cross and Blue Shield of New York ("Empire"), as authorized by 42 U.S.C. 1395u. Under this administration, Empire reviews and approves claims submitted for reimbursement by certain Medicare providers, including Parkway Hospital, and makes payment on those claims which appear to be eligible for reimbursement under the Medicare program.

11. The total reimbursement rate provided under the Medicare program is calculated on a cost basis and correlated to a hospital's usual and customary costs for providing services and

4

resources.    A hospital seeking reimbursement by Medicare must submit a cost reporting form each year ("Cost Report") setting forth the reimbursable costs incurred by the provider.

12.  If the Cost Reports fraudulently inflate the actual costs incurred by a hospital participating in the Medicare program, then the hospital will receive a higher rate of reimbursement from Medicare than is deserved.

A.    Fraudulent Inclusion in Medicare Reimbursement Reports
      of Non-Permissible Expenses Related to Outside Business

13.  The physician owners of Parkway Hospital, as well as certain of the senior management of Parkway Hospital, own a company called Queens Medical Management, Inc. ("QMM") which owns and operates some seven satellite clinics throughout the Borough of Queens.

14.  QMM incurred at least three millions dollars in expenses in the construction of QMM offices and in the start-up of QMM operations as well as other expenses for the years 1995, 1996 and 1997 (collectively the "QMM Expenses").

15.  Parkway Hospital included the QMM Expenses in the Cost Reports submitted to Empire for Medicare reimbursement.

16. Although Parkway Hospital included the QMM Expenses in the Cost Reports, Parkway Hospital failed to indicate that the QMM Expenses were those of a "related organization" within the meaning of 42 C.F.R. 413.17.    In any event, the QMM

Expenses do not qualify as reimbursable expenses under the Federal Medicare Program, because the QMM Expenses were not related to the providing of services to Medicare eligible patients.

17. Parkway Hospital knew that the QMM expenses were not reimbursable under the Medicare program. In particular, in or about May 1997, before the 1996 Cost Report was submitted to Empire, the relator participated in a conference call with Paul Svensson, the Chief Executive Officer of Parkway Hospital, Nickolas Christopher, the Chief Operating Officer of Parkway Hospital, and Dan Davies, Senior Accountant for Parkway Hospital.

18. During this conference call, 'the relator expressed his concern that the QMM Expenses incurred during the calendar year 1996 should not be included in the 1996 Cost Report. Svensson replied that he understood that the QMM Expenses should not be included in the Cost Reports submitted to Empire, but stated "Let's just leave it [the QMM Expenses] for now."

19. In addition, the relator expressed his misgivings about the inclusion of the QMM Expenses in the Cost Reports to Naishe Jacalone, an accountant at Ernst & Young. (Ernst & Young acted as Reimbursements Consultants for Parkway Hospital in 1997.) Mr. Jacalone was responsible for preparing and filing the Cost Report for Parkway Hospital for the calendar year 1996, which was due to be submitted to Empire in May 1997. Mr. Jacalone used to work for Empire and used to give seminars concerning the preparation of Medicare cost reports.

20.     The relator stated to Mr. Jacalone in or around May 1997 that Parkway Hospital should not include the QMM Expenses in the Defendant's 1996 Cost Report. Mr. Jacalone acknowledged that the inclusion of the QMM Expenses in the 1996 Cost Report would be improper, but nonetheless participated in the fraudulent scheme to include such expenses, resulting in a false claim submitted to the United States, for the purpose of obtaining a higher Medicare reimbursement.

21. By means of this fraudulent scheme, Parkway Hospital did illegally profit in an amount estimated to be in excess of $2.0 million.


B.     Fraudulent Manipulation of Accounting
       Records to Enhance Medicare-Reimbursable Expenses

22.     Parkway Hospital's accounting is performed on a calendar year "accrual" basis.   In addition, the Cost Reports submitted to Empire are performed on an "accrual" basis as well.

23.     The Cost Report for 1997 (the "1997 Cost Report") is due to be submitted to Empire on or before May 31, 1998.

24.     The 1997 Cost Report being prepared will show $2,100,000.00 in expenses allegedly reimbursable under Medicare. However, of this $2,100,000.00 figure, $500,000 represents expenses which were actually incurred in 1998.   Therefore, this $500,000.00 in expenses should not be included in the 1997 Cost

7

Report, because the costs attributable to the $500,000.00 were not incurred in 1997.

25. On information and belief, Parkway Hospital intends to, and will, include the $500,000.00 in costs incurred in 1998 in the 1997 Cost Report, as part of a fraudulent attempt to inflate the expenses reimbursable to defendant under the Medicare program.

26. On information and belief, Parkway Hospital intends to, and will, include this $500,000.00 figure in its tax returns as expenses allegedly incurred in 1997, in an attempt to offset taxable 1997 income.

27. On information and belief, Parkway Hospital intends to, and will, include in its 1997 Cost Report (which will be submitted to Empire on or before May 31, 1998) expenses amounting to approximately $3,000,000.00 categorized as "accelerated depreciation." However, the $3,000,000.00 figure is falsely inflated. Parkway Hospital cannot, under generally accepted accounting principles, genuinely arrive at a figure of $3,000,000.00 in accelerated depreciation.

28. On information and belief, Parkway Hospital intends to, and will, include the $3,000,000.00 as accelerated depreciation in its 1997 Cost Report as part of a fraudulent attempt to inflate the expenses reimbursable to defendant under the Medicare program.

29. On information and belief, Parkway Hospital intends to, and will, include this $3,000,000.00 figure in its

tax returns as expenses allegedly incurred in 1997, in an attempt to offset taxable 1997 income.

30. Senior management of Parkway Hospital, as well as Parkway Hospital's auditors, accountants and attorneys are fully aware of these practices, and the improper nature of these practices. For example, the accounting firm of Weiss & Co. assisted in devising the back-dating practices, and the legal firm of Garfunkel, Wild & Travis were in continual contact with the resigning auditors regarding their concerns.

31. In good part related to these practices, the tax auditor, Ernst & Young, resigned and two Chief Financial Officers resigned over a period of six months.

32. By means of this fraudulent scheme, Parkway Hospital will illegally profit in an amount estimated to be in excess of $3,000,000.00.

C. Fraudulent Inclusion of Non-Permissible Expenses Incurred for the Personal Benefit of Parkway Hospital's Doctor/Shareholders

33. Parkway Hospital employees and at least one contracting firm continually perform construction, renovation and improvement projects on the private homes of Parkway doctor-shareholders.

34. For example, one hospital handy-man, Eric Williams, regularly performs repairs and improvements to the

personal houses of doctor-owners of Parkway Hospital, and regularly receives thousands of dollars denominated petty cash on hospital records for these services.

35. As a second example, Morgan Contractors have billed the hospital for several hundred thousand dollars with no evidence of work done on the hospital's premises. Work invoices for Morgan Contractors are kept separately from all other work invoices, in the offices of Chief Operating Officer Nickolas Christopher. Further, open invoices of Morgan Contractors are not maintained on Parkway Hospital's accounts payable system as all other open invoices are. The relator has seen work invoices for Morgan Contractors which appear quite questionable as they are repetitive in the work allegedly performed on Parkway Hospital's premises.

36. Parkway Hospital has included these expenses on the Cost Reports submitted to Empire for the purpose of obtaining Medicare reimbursement.

37. Defendant included such expenses knowing full well that they were unrelated to medical care for Medicare eligible patients, and therefore were not eligible for Medicare reimbursement.

38. As a result, Parkway Hospital has defrauded the United States by obtaining improper Medicare reimbursement for expenses which are unrelated to patient care and ineligible for reimbursement under the Medicare Program.

10

39. By means of this fraudulent scheme, Parkway Hospital's doctor-shareholders did illegally profit in an amount estimated to be in excess of $250,000.00.

COUNT I   (False Claims Act)

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as though fully set fourth herein.

41. Defendant Parkway Hospital has knowingly submitted false or fraudulent claims for payment, or caused false or fraudulent claims for payment to be submitted, to officials and/or agents of the United States government, in violation of 31 U.S.C. Section 3729(a)(1).

42. Defendant Parkway Hospital has knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States government, in violation of 31 U.S.C. Section 3729(a)(2), to the damage of the Treasury of the United States.

43. Because of the Defendant's conduct set forth above, the United States has suffered actual damages.

## PRAYER FOR RELIEF

Wherefore, plaintiff Anthony Fullington, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against defendant Parkway Hospital as follows:

1. For treble the amount of the United States' damages, plus civil penalties of $10,000 for each false claim;

2. For all costs of this civil action; and

3. For such other and further relief as the Court deems just and equitable.

MOREOVER, plaintiff Anthony Fullington, on his own behalf, demands and prays that an award be made in his favor as follows:

1. On Count I of the Complaint, for 25 percent of the proceeds collected by the United States if the United States intervenes in and conducts this action, or for 30 percent of the proceeds if the United States does not intervene; or for the maximum amount allowed pursuant to Section 3730(d) of the False Claims Act and/or any other applicable provision of law.

2. For an amount for reasonable expenses necessarily incurred by the relator in the prosecution of this action; for all reasonable attorneys fees and costs incurred by the relator; and

3. For such other and further relief to which the relator may show himself justly entitled.

12

## DEMAND FOR JURY TRIAL

Plaintiff Anthony Fullington demands that this case be tried before a jury.

Dated:  New York, New York
        May *14*, 1998

                              SKLOVER, HIMMEL & SHEPARD, LLP
                              Attorneys for Plaintiff
                              Ten Rockefeller Plaza
                              New York, New York 10020
                              (212) 757-5000

                              By: _____
                                  Alan L. Sklover (AS-3737)

13