# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

N° 98-CV-3618 (JFB) (RLM)

UNITED STATES *EX REL.* ANTHONY FULLINGTON,

Plaintiff,

VERSUS

PARKWAY HOSPITAL, INC.,

Defendant.

MEMORANDUM AND ORDER
September 19, 2006

JOSEPH F. BIANCO, District Judge:

This action was commenced by relator plaintiff Anthony Fullington in the name of the United States, pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. The United States elected to intervene and proceed with one count in the action. Defendant Parkway Hospital, Inc. ("Parkway") is in the midst of a Chapter 11 bankruptcy proceeding, and contends that the automatic stay arising under section 362 of the Bankruptcy Code serves to stay the instant action. For the reasons stated below, the Court finds that the government may proceed with its FCA claim against Parkway under the police and regulatory powers exception to the automatic stay, pursuant to 11 U.S.C. § 362(b)(4). On the other hand, the Court stays the action with respect to claims maintained solely by the relator against Parkway because the relator is not a "governmental unit" for the purposes of the § 362(b)(4) exception.

I. BACKGROUND

Fullington commenced this proceeding against Parkway in the name of the United States pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-33. The complaint alleges, *inter alia*, that Parkway wrongfully included certain non-covered costs in annual reports submitted to the Medicare Program for reimbursement, and received payment for those costs. On March 31, 2004, the United States intervened with respect to one of the counts in the complaint, pursuant to 31 U.S.C. § 3730(b)(2).

Subsequent to the filing of the instant suit, Parkway filed for voluntary bankruptcy under Chapter 11 of the Bankruptcy Code in the Southern District of New York. In the instant motion, Parkway urges the Court to find that the instant action is stayed under the automatic stay provision pursuant to section 362 of the Bankruptcy Code. The parties filed letter briefs addressing this issue to the

Honorable Dora L. Irizarry, who was presiding over the case at the time. On April 12, 2006, the case was reassigned to the undersigned. Oral argument was held on September 5, 2006.

## II. LEGAL STANDARDS

Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor.[1] *See Eastern Refractories Co. Inc., v. Forty Eight Insulations, Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). The automatic stay is a fundamental component of a bankruptcy petition, as it "provides the debtor with a breathing spell from his creditors" and "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Shugrue v. Air Lines Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (internal citations and quotation marks omitted).

---

[1] Section 362(a) provides, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of– (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . .

Section 362(b)(4) of the Bankruptcy Code provides an exception to the automatic stay for actions by a governmental unit to enforce its police or regulatory power. Specifically, it provides that the filing of a bankruptcy petition does not operate as a stay against:

> commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4). As the Second Circuit explained, "the purpose of this exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Securities and Exchange Comm'n v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation and citations omitted). "Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action of proceeding is not stayed under the automatic stay." *Id.* (internal quotation and citations omitted).

In attempting to apply the § 362(b)(4) exception, courts look to the purposes of the law that the government seeks to enforce, to distinguish between situations in which a "state acts pursuant to its 'police and regulatory power,' and where the state acts merely to protect its status as a creditor." *Safety-Kleen, Inc. v. Wyche (In re Pinewood)*,

2

274 F.3d 846, 865 (4th Cir. 2001) (quoting *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir. 1997)); *Enron Corp. v. People of the State of California (In re Enron Corp.)*, 314 B.R. 524, 535 (Bankr. S.D.N.Y. 2004). Two tests have been historically applied to resolve this question: (1) the "pecuniary purpose" test (sometimes referred to as the "pecuniary interest" test), and (2) the "public policy" test. *See Universal Life Church*, 128 F.3d at 1297; *see also In re Chateauguay Corp.*, 115 B.R. 28, 31 (Bankr. S.D.N.Y. 1988). Under the pecuniary purpose test, a court looks to whether a governmental proceeding relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not. *See Enron*, 314 B.R. at 535; *see also Chateuagay*, 115 B.R. at 31. The public policy test, in turn, distinguishes "'between proceedings that adjudicate private rights and those that effectuate public policy.'" *Chateaugay*, 115 B.R. at 31 (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988)). The inquiry is objective—a court must examine the purpose sought to be achieved by the law generally, rather than the government's intent in enforcing the particular law in that case. *See United States v. Commonwealth Cos., Inc. (In re Commonwealth Cos.)*, 913 F.2d 518, 523 n.6 (8th Cir. 1990); *see also Enron*, 314 B.R. at 535.

Other courts have backed away from the "pecuniary purpose" test, and apply a broader "pecuniary advantage" test. *Commonwealth Cos.*, 913 F.2d at 523-25; *see also United States ex rel. Jane Doe 1 v. X, Inc.*, 246 B.R. 817, 820 (E.D. Va. 2000). Under the "pecuniary advantage" test, the relevant inquiry is not whether the governmental unit seeks property of the debtor's estate, but rather whether the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-à-vis other creditors. *See Commonwealth Cos.*, 913 F.2d at 523; *Jane Doe 1*, 246 B.R. at 820. Exception under the pecuniary purpose test is much narrower, as it renders "any attempt by the government to fix the amount of damages for a police or regulatory violation subject to the provisions of the automatic stay." *Jane Doe 1*, 246 B.R. at 820 (citing *In re Bicoastal Corp.*, 118 B.R. 854 (M.D. Fla. 1990)); *Commonwealth Cos.*, 913 F.2d at 525 ("'Under the 'pecuniary interest' test as it seems to be applied, a money judgment could *never* be entered against a debtor, for it would necessarily represent only a 'pecuniary interest' in the property of the debtor, thus triggering the automatic stay.'") (quoting *CPI Crude, Inc. v. United States Dep't of Energy*, 77 B.R. 320, 323 (D.D.C. 1987) (emphasis in original)); *Chateaugay*, 115 B.R. at 33 (noting that action was merely "to fix damages" as part of its analysis concluding that the § 362(b)(4) exception to the stay was inapplicable). However, under the pecuniary advantage test, the § 362(b)(4) exception applies to actions that seeks to enter a judgment for money damages because it would "simply fix the amount of the government's unsecured claim against the debtors" and would not otherwise "convert the government into a secured creditor, force payment of a prepetition debt, or otherwise given the government a pecuniary advantage over other creditors of the debtors' estate." *Commonwealth Cos.*, 913 F.2d at 524.

III. DISCUSSION

The central issue in this case is whether a lawsuit brought under the FCA is an exercise of the Department of Justice's "police and regulatory power" for the purposes of the §

3

362(b)(4) exception to the automatic bankruptcy stay.[2]

Parkway asserts that courts within the Second Circuit have consistently found that FCA claims are not exempt from the automatic bankruptcy stay under § 362(b)(4). In support of this proposition, Parkway cites three cases: *In re Chateaugay Corp.*, 115 B.R. 28 (Bankr. S.D.N.Y. 1988); *United States v. Seitles*, 106 B.R. 36 (S.D.N.Y. 1989), *vacated on other grounds*, 742 F. Supp. 1275 (S.D.N.Y. 1990); and *Enron Corp. v. People of the State of California (In re Enron Corp.)*, 314 B.R. 524 (Bankr. S.D.N.Y. 2004). The Court proceeds to examine each of these decisions in turn.

First, in *Chateaugay*, the Bankruptcy Court for the Southern District of New York noted that "'the type of governmental action Congress anticipated to be excepted from the stay is a circumstance which requires injunctive relief, and the type of damages intended to be permitted are those accompanying or following an injunctive action.'" 115 B.R. at 32 (quoting *In re Commonwealth Cos., Inc.*, 80 B.R. 162, 164 (Bankr. D. Neb. 1987), *rev'd* 913 F.2d 518 (8th Cir. 1990)). The Court found that under either the pecuniary purpose or public policy test, the FCA "'is merely an action for damages,'" highlighting the fact that the preface of the FCA does not include a public or safety purpose. *See id.* (quoting *Commonwealth Cos.*, 80 B.R. at 165.) The *Chateaugay* court rejected the government's argument that deterrence would be furthered by the action, noting that the alleged violations took place over ten years earlier, and that the defendant was no longer in business. *See id.* Noting that the action was only "to fix damages" for violation of the FCA, the court concluded that it did not fall under the § 362(b)(4) exception from the automatic stay. *Id.* at 33.

Similarly in *Seitles*, the district court concluded that a claim brought under the FCA did not fall under the § 362(b)(4) stay exception. *See* 106 B.R. at 40. First, it found that the pecuniary purpose test counseled towards application of the stay because the case at hand, involving fraudulently obtained printing contracts, "posed only a monetary, not a safety, threat to the government." 106 B.R. at 39. Further, the court noted that pecuniary purposes predominated, given the fact that defendants had already been criminally convicted and sentenced in connection with the underlying fraud, and so the civil action did not serve to stop any continuing harm by the debtor. *See id.* With respect to the public policy test, the court concluded, following *Chateaugay*, that deterrence was not the government's primary motivation because deterrence was already served by the criminal penalties assessed in the underlying criminal action, which

---

[2] As a threshold matter, the relator argues that Parkway has waived the protections of the stay by participating in the instant suit for over six months after the bankruptcy petition was filed, without arguing that the automatic stay applies. The Court rejects this argument—"[i]t is well settled that, since the purpose of the automatic stay is to protect creditors as well as the debtor, the debtor may not waive the stay." *In re Enron Corp.*, 300 B.R. 201, 213 (Bankr. S.D.N.Y. 2003) (citing *Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986); *Shimer v. Fugazy (In re Fugazy Express)*, 982 F.2d 769, 776 (2d Cir. 1992) ("Unless lifted by the court, the stay remains in effect until the case is concluded."); *Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995) ("The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case.")).

4

included an order to pay restitution. *See Seitles,* 106 B.R. at 39-40.

Finally, in *Enron,* the Bankruptcy Court for the Southern District of New York revisited the issue with respect to a lawsuit brought by the California Attorney General seeking civil penalties against Enron Corporation under California's Unfair Competition Law and Commodity Law, regarding the alleged manipulation of the California energy markets. *See* 314 B.R. at 535. As with the FCA, the court noted that the California consumer protection laws at issue included a treble damages provision, and were acknowledged to have both restitution and deterrence purposes. *See id.* at 530-31, 35-36. The court applied the pecuniary purpose test, and relying extensively on *Chateaugay* and *Seitles,* noted that the stay was applicable because the primary purpose of the lawsuit was "to seek money damages or other monetary relief for past conduct, and not to prevent future conduct that could harm the public health or safety." *See Enron,* 314 B.R. at 538 (citing *Seitles,* 106 B.R. at 39; *Chateaugay,* 115 B.R. at 31-33). The court highlighted the fact that the threat of continuing harm was remote, as Enron was no longer a going concern, and deterrence was already served by proceedings initiated by the Federal Energy Regulatory Commission (FERC), as well as the well-publicized criminal prosecutions of former Chairman and CEO Kenneth Lay, former CEO Jeff Skilling, former CFO Andrew Fastow, and the top three Enron executives directly responsible for Enron's alleged manipulation of the energy markets in California. *See id.* at 538-39.

The Court does not find the *Chateaugay, Seitles* and *Enron* cases persuasive, as they are all based on reasoning that no longer appears applicable, given developing precedent regarding the application of the § 362(b)(4) exception.

First, all three of the decisions cited by Parkway rely on an analysis conducted pursuant to the "pecuniary purpose" test, and conclude that since the actions in those cases only sought damages for past and not continuing harm, the suits were brought only to vindicate the pecuniary interest of the government and were therefore not subject to the § 362(b)(4) exception. *See Chateaugay,* 115 B.R. at 31-33; *see also Seitles,* 106 B.R. at 39; *Enron,* 314 B.R. at 538. The "pecuniary interest" language, first quoted in *Chateaugay,* was derived from the "isolated remarks of a congressman and a senator during floor debates"[3] on the Bankruptcy Reform Act:

> This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

115 B.R. at 32 (quoting 124 Cong.Rec. 32, 395 (1978) (Statement of Rep. Edwards); 124 Cong.Rec. 33,995 (1978) (identical Statement of Sen. Deconcini); *In re Commonwealth Cos., Inc.,* 80 B.R. at 164) (emphasis omitted). However, in *Commonwealth Companies,* the Eighth Circuit also highlighted other legislative history contained within legislative committee reports regarding the § 362(b)(4) exception's applicability to governmental efforts to fix the amount of damages for violations of law:

---

[3] *In re Mansfield Tire & Rubber Co.,* 660 F.2d 1108, 1112 (6th Cir. 1981).

5

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

913 F.2d at 522 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5838; H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6299) (emphasis omitted). The Eighth Circuit noted that "[t]his legislative history makes it plain that § 362(b)(4) permits the government to seek the entry of a money judgment as its sole remedy for the violation of a fraud or other police or regulatory law." *Commonwealth Cos.*, 913 F.2d at 522. The Eighth Circuit highlighted the tension between (1) a narrow "pecuniary purpose" test derived from the remarks from the floor debate, which would never allow a money judgment to be entered against a debtor, "for it would necessarily represent only a 'pecuniary interest' in the property of the debtor";[4] (2) the plain statutory terms, which only explicitly exclude the *enforcement* of a monetary *judgment* from the ambit of the § 362(b)(4) exception; and (3) the Senate and House Reports, which it concluded permitted the government to seek the entry of a money judgment notwithstanding a bankruptcy stay. *See id.* at 523-25 (internal citations omitted). The Eighth Circuit rejected the lower court's application of a narrow pecuniary interest test, finding that the pecuniary advantage test, looking to whether the action interfered with the bankruptcy's control of the property or created advantage to the government vis-à-vis other parties and creditors of the estate, was more aligned with the express statutory language and Senate and House Reports.[5] *See id.* at 524-25. A number of other courts, relying on *Commonwealth Companies*, have adopted the broader "pecuniary advantage" test. *See, e.g., Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 389 n.9 (6th Cir. 2001); *Jane Doe 1*, 246 B.R. at 820 (rejecting pecuniary interest test in favor of pecuniary advantage test, relying on *Commonwealth Companies*).

The Court agrees that the pecuniary advantage test is the appropriate standard to apply regarding the § 362(b)(4) exception, finding the Eighth Circuit's reasoning in *Commonwealth Companies* persuasive. First, the Court concludes that the pecuniary advantage test is most consistent with the

---

[4] The Supreme Court has emphasized the dangers in courts interpreting statutes by relying on remarks from floor debates or similar comments by lawmakers to discern legislative intent. *Garcia v. United States*, 469 U.S. 70, 76 n.3 (1984) ("[T]o select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions.") (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395-96 (1951) (Jackson, J., concurring)). The conflict that is created in the instant case by passing comments made on the floor of Congress and the committee reports highlights the very danger created by relying on legislative history to interpret statutory language.

[5] It should be noted that the *Chateaugay* and *Seitles* decisions relied extensively upon the bankruptcy court decision, subsequently reversed by *Commonwealth Companies*, for the proposition that the § 362(b)(4) exception should be construed narrowly and not apply to actions for damages. *See Chateaugay*, 115 B.R. at 31-33; *see also Seitles*, 106 B.R. at 38-40.

6

statutory language and, thus, should be adopted. The plain language of § 362(b)(4) exempts from the automatic stay efforts of the government to exercise their police and regulatory power, and only specifically carves out attempts to *enforce* money judgments. Thus, the statutory language lacks any textual basis for the pecuniary interest test because it contains no broader exclusion on efforts by the government to pursue lawsuits that concern money damages generally. Indeed, the language is more consistent with the pecuniary advantage test because it does not exclude efforts by the government to *fix* damages for violation of a statute, provided that such effort is an enforcement of the governmental unit's police and regulatory power.

Second, although the Second Circuit has not directly addressed the conflict between the "pecuniary purpose" or "pecuniary interest" test and the "pecuniary advantage" test, the Court believes that it would also adopt the "pecuniary advantage" test and follow the reasoning of the Eighth Circuit, based on its pronouncements in *Securities and Exchange Commission v. Brennan*, 230 F.3d 65 (2d Cir. 2000). In *Brennan*, the Second Circuit quoted the identical legislative history passage from the Senate and House Reports that the Eighth Circuit relied on, and cited other precedent, to assert that "[i]t is well established that the governmental unit exception of § 362(b)(4) permits the *entry* of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power." 230 F.3d at 71 (citations omitted) (emphasis in original). It would be inconsistent for the Second Circuit to endorse the narrower "pecuniary purpose" test, having endorsed the view that a governmental unit could seek the *entry* of a money judgment despite a bankruptcy stay.[6]

Moreover, according to the Second Circuit in *Brennan*, the imposition of financial liability on a party deters unlawful behavior and thus serves the police and regulatory efforts of the government, and the Court distinguished efforts of the government to *enforce* any such judgments as being beyond the scope of the stay exception provided by § 362(b)(4):

> When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity–it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior much more expensive. It is this added expense that deters a party from defrauding or polluting–not the identity of the entity which it must eventually pay. Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in

---

[6] If confronted with the conflict in legislative history identified by the Eighth Circuit between the floor debate remarks and the Senate and House reports, the Second Circuit is likely to agree with the analysis giving more weight to the committee reports, favoring the "pecuniary advantage" test, given that it favorably quoted the identical committee report language in *Brennan*, and the fact that it regularly avoids reliance on remarks made during floor debates when it has found it necessary to analyze legislative history. *See United States v. Nelson*, 277 F.3d 164, 186-87 (2d Cir. 2002) (eschewing reliance on the "passing comments of one Member, and casual statements from the floor debates," and focusing on committee reports instead) (citing *Garcia*, 469 U.S. at 76).

its police or regulatory capacity–in the public interest, it is burdening certain conduct so as to deter it. However, once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate its own interest in collecting its judgment.

230 F.3d at 72-73. Drawing the line at attempts by the government to enforce a monetary judgment against the bankrupt entity's estate is consistent with the "pecuniary advantage" test, which excludes attempts by the government to gain an advantage over other creditors from use of the § 362(b)(4) exception. Thus, based on the statutory language, as well as the reasoning *Brennan* and *Commonwealth Companies*, the Court finds that the "pecuniary advantage" test is the proper standard to apply in the instant case.

Applying the "pecuniary advantage" test, the Court finds that the fact that the Department of Justice is seeking monetary damages for past fraud does not prevent the application of the § 362(b)(4) exception. At this juncture, up to the point that a judgment is entered and the amount of damages is fixed, the government is not conferred any advantage over Parkway's creditors or any third parties—if the government is successful in obtaining the entry of a judgment, it would merely become an unsecured creditor of Parkway, which would not conflict with the bankruptcy court's control of the debtor or the estate.[7] *Commonwealth Cos.*, 913 F.2d at 524 ("The entry of judgment would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate.") Since § 362(b)(4) plainly allows the entry of a money judgment, the only remaining question is whether or not the judgment is entered as part of a proceeding to enforce the governmental unit's police or regulatory power. *Brennan*, 230 F.3d at 71 ("[Section] 362(b)(4) permits the *entry* of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power.") (emphasis in original).

The Court finds that actions brought pursuant to the FCA enforce the Department of Justice's police or regulatory power because it serves the important public policy interest of deterring fraud upon the government. Although it is undeniable that the FCA has, as one of its purposes, the objective of providing restitution to the government for frauds committed upon the national treasury, *see United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551 (1943), it is well-settled that the statutory scheme, which includes a treble damages provision,

---

[7] If the government is successful in obtaining an entry of judgment against Parkway, and if Parkway is still bankrupt at that juncture, the government would be required to petition the bankruptcy court for relief to enforce the judgment, where it would be on equal footing as other similarly situated unsecured creditors. *Brennan*, 230 F.3d ay 72 (noting that "'[t]he collection of [a money] judgment *after entry* . . . is not authorized . . . and requires a separate application to the bankruptcy court.'") (quoting *NLRB v. 15th Avenue Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992)); *see also Jane Doe 1*, 246 B.R. at 821 (noting that suit could proceed under § 362(b)(4) exception up to and including entry of judgment, but could not seek enforcement of such judgment).

8

also has the distinct public policy purpose of punishing and deterring fraud committed upon the national treasury. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 784-86 (2000) ("[T]he current version of the FCA imposes damages that are essentially punitive in nature . . . 'The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.'") (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981)); *see also United States v. Bornstein*, 423 U.S. 303, 309 & n.5 (1976) (noting that the FCA was adopted for the purpose of punishing and preventing frauds); *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001) (noting that the FCA has, as one of its purposes, punishing and preventing frauds); *United States ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 487-88 (S.D.N.Y. 2006) (noting that the purposes of the FCA are "to deter fraud and recover treasury funds lost to fraud"). Based on the FCA's public policy purpose of deterring fraud against the government, the Eighth Circuit held that suits brought by governmental units under the FCA are exempt from the ambit of the automatic bankruptcy stay, pursuant to the § 362(b)(4) police and regulatory power exception:

> [C]ivil actions by the government to enforce the FCA serve to inflict the "sting of punishment" on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem. The police and regulatory interests furthered by enforcement of the FCA are undeniably legitimate and substantial. The fact that the statute's chief purpose is to make the government whole does not reduce the weight of these interests so as to make their vindication insufficient to qualify for the § 362(b)(4) exception from the automatic stay. We find nothing in the language or legislative history of the exception that warrants such an artificial restriction on its scope.

*Commonwealth Cos.*, 913 F.2d at 526; *Universal Life Church*, 128 F.3d at 1298 ("[A] civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception.") (citing *Commonwealth Cos.*, 913 F.2d 518); *United States ex. rel. Goldstein v. P & M Draperies, Inc.*, 303 B.R. 601, 603 (D. Md. 2004) ("[I]t is well settled that an action under the False Claims Act qualifies as an action to enforce the government's 'police or regulatory power.'") (citing *Commonwealth Cos.*, 913 F.2d at 527); *Jane Doe 1*, 246 B.R. at 818-19 (holding that claims brought under the FCA were exempt from bankruptcy stay under § 362(b)(4)); *accord United States ex rel. Marcus v. NBI, Inc.*, 142 B.R. 1, 4 (D.D.C. 1992). The Court agrees with the reasoning of *Commonwealth Companies* because it is well-established that the FCA is punitive in nature and serves to deter fraud, and the Second Circuit has endorsed the proposition that deterrence through the imposition of financial liability falls within the scope of governmental police or regulatory efforts.[8] *Brennan*, 230 F.3d at

---

[8] In *Chateaugay*, *Seitles*, and *Enron*, the courts rejected the government's argument that the lawsuit at issue served deterrence purposes by pointing out the fact that the entities at issue were no longer capable of committing fraud, and that deterrence was being served by other means, including parallel criminal prosecutions. However, as the bankruptcy court noted in *Enron*, courts have moved away from a subjective analysis focusing on the propriety of whether particular exercises of police and regulatory

72-73 ("When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity—it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive . . . up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity–in the public interest, it is burdening certain conduct so as to deter it.").

Having determined that the government may proceed with its FCA claim against Parkway—up to the point of entry of judgment—under the § 362(b)(4) exception, the Court must briefly turn to discuss the status of the claims brought by Fullington against Parkway in which the government did not intervene.

The Court finds that the claims asserted by relator Fullington against Parkway, in which the government has not intervened, are stayed by the automatic stay provision of § 362(a). Once again, the Court begins its inquiry by consulting the plain language of the statute. If the statute has a "'plain and unambiguous meaning with regard to the particular dispute in the case,'" the inquiry ends, unless the case falls within the rare situation in which "the result reached by applying the plain language is sufficiently absurd to override its unambiguous terms." *Frank G. v. Bd. of Educ. of Hyde Park*, __ F.3d ___, 2006 WL 2077009, at *10 (2d Cir. July 27, 2006) (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 459 (2002)). The plain text of § 362(b)(4) specifically indicates that the exception is applicable to an "action or proceeding by a *governmental unit*."[9] 11

---

authority are legitimate, and now "look only to the purpose of the law that the governmental unit is attempting to enforce to determine whether the section 362(b)(4) exception applies." *Enron*, 314 B.R. 534-35 (citing *Pinewood*, 274 F.2d at 865); *Pinewood*, 274 F.2d at 865 ("The inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case."); *Commonwealth Cos.*, 913 F.2d at 523 n.6 ("[A]n inquiry into the subjective purposes behind a given FCA lawsuit would be amorphous and speculative . . . the appropriate analysis under § 362(b)(4) is one which focuses on the purposes underlying the law that the government is attempting to enforce.") (internal quotation and citations omitted). Despite this phenomenon and citing the proper objective standard, *Enron* itself curiously invoked the subjective analysis, rejecting the government's argument that the lawsuit under California consumer law served deterrence purposes given the fact that Enron was no longer viable and deterrence was being served by other means, including criminal prosecutions for the alleged fraud and FERC's revocation of energy trading licenses. *See* 314 B.R. at 538-39. The proper mode of analysis was that applied by the Eighth Circuit in *Commonwealth Companies*, which objectively looked to the nature and purposes of FCA actions generally, to determine whether actions brought under the statute were subject to the automatic bankruptcy stay, or exempted under § 362(b)(4). That notwithstanding, even if the subjective form of analysis applied by *Chateaugay*, *Seitles* and *Enron* is still viable, the instant case is facially distinguishable because Parkway remains operational in the hospital services industry, and the instant action constitutes the only vehicle through which the government has attempted to address the alleged fraud committed on the Medicare system.

[9] Apart from actions brought by a "governmental unit," § 362(b)(4) also applies to actions brought by an action or proceedings commenced by an "organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction,

10

U.S.C. § 362(b)(4) (emphasis added). The definition of "governmental unit" is provided in 11 U.S.C. § 101(27):

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"This definition is limited to actual government entities and makes no mention of *qui tam* plaintiffs . . . [A]lthough a *qui tam* action can certainly be said to be an action 'on behalf' of a 'governmental unit' or 'for' a 'governmental unit,' it is not an action 'by a governmental unit.'" *Goldstein*, 303 B.R. at 603-04. Since the Court finds that the plain statutory language does not include *qui tam* plaintiffs, and the plaintiffs have not proferred any authority supporting the proposition that a private party acting on behalf of a state can assert the § 362(b)(4) exception, the Court finds that Fullington's claims against Parkway are stayed pursuant to § 362(a). *See Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05-CV-5704 (RPP), 2006 WL 2270379, at *6 (S.D.N.Y. Aug. 8, 2006) (holding that *qui tam* plaintiff could not assert § 362(b)(4) exception where government declined to intervene).

---

opened for signature on January 13, 1993." 11 U.S.C. § 362(b)(4). The parties do not argue that Fullington constitutes such an organization, nor is there any sound basis for arguing so.

IV. CONCLUSION

In sum, the Court finds that the government's FCA action against Parkway is not stayed by Parkway's bankruptcy, pursuant to the § 362(b)(4) police and regulatory power exception. The government may proceed with its action, up until the point that damages are fixed through the entry of judgment. On the other hand, the relator may not proceed with his claims against Parkway because he is not a "governmental unit" and, thus, may not take advantage of the § 362(b)(4) exception from the automatic bankruptcy stay.

Accordingly, the instant action is stayed in part, only with respect to relator's claims against Parkway for which the government has declined intervention.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: September 19, 2006
Central Islip, New York

* * *

The attorney for the United States is Richard K. Hayes, Esq., Assistant United States Attorney, for Roslynn R. Mauskopf, Esq., United States Attorney for the Eastern District of New York, 147 Pierrepoint Street, Brooklyn, New York 11201. The attorneys for relator plaintiff Fullington are Alan L. Sklover, Esq. and Jason W. Snell, Esq., of Sklover & Associates, Ten Rockefeller Plaza, New York, New York 10020. The attorney for defendants is Carlos F. Ortiz, Esq., of DLA Piper Rudnick Gray Cary US LLP, 1251 Avenue of the Americas, New York, New York, 10020-1104.